# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| _____ | ) | |
| ELECTRONIC PRIVACY | ) | |
|      INFORMATION CENTER | ) | |
| | ) | |
|      Plaintiff, | ) | |
| | ) | |
|      v. | ) | Case No. 1:14-cv-01217-RBW |
| | ) | |
| U.S. CUSTOMS AND BORDER PROTECTION | ) | |
| | ) | |
| | ) | |
|      Defendant. | ) | |
| _____ | ) | |

## PLAINTIFF'S COMBINED OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT

Plaintiff, Electronic Privacy Information Center, respectfully opposes the Defendant

United States Department of Customs and Border Protection's Motion for Summary Judgment,

and cross-moves for summary judgment pursuant to Federal Rule of Civil Procedure 56(a) for

the reasons set forth in the accompanying Memorandum of Points and Authorities.

Dated: June 29, 2015          Respectfully submitted,

                                   MARC ROTENBERG
                                   EPIC President

                                   ALAN JAY BUTLER
                                   Senior Counsel

                                   /s/ Khaliah N. Barnes
                                   KHALIAH N. BARNES
                                   EPIC Administrative Law Counsel
                                   Electronic Privacy Information Center
                                   1718 Connecticut Ave., NW
                                   Suite 200
                                   Washington, DC 20009

                                   *Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| ELECTRONIC PRIVACY ) | |
|      INFORMATION CENTER ) | |
| ) | |
|      Plaintiff, ) | |
| ) | |
|      v. ) | Case No. 1:14-cv-01217-RBW |
| ) | |
| U.S. CUSTOMS AND BORDER PROTECTION ) | |
| ) | |
| ) | |
|      Defendant. ) | |
| _____ ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S OPPOSITION AND CROSS-MOTION FOR SUMMARY JUDGMENT**

MARC ROTENBERG
EPIC President

ALAN JAY BUTLER
Senior Counsel

/s/ Khaliah N. Barnes
_____
KHALIAH N. BARNES
EPIC Administrative Law Counsel
Electronic Privacy Information Center
1718 Connecticut Ave., NW
Suite 200
Washington, DC 20009

*Counsel for Plaintiff*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ...................................................................................................................... 2

   I.   CBP ANALYZES SECRET RISK-BASED PROFILES ASSIGNED TO US CITIZENS IN THE ANALYTICAL FRAMEWORK FOR INTELLIGENCE............................................ 2

   II.   CBP'S ANALYTICAL FRAMEWORK FOR INTELLIGENCE COULD CHILL EXPRESSIVE ACTIVITY PROTECTED BY THE FIRST AMENDMENT .......................... 4

   III.   FACTUAL BACKGROUND ......................................................................................... 5

ARGUMENT .......................................................................................................................... 6

   I.   STANDARD OF REVIEW.......................................................................................... 8

   II.   EPIC IS ENTITLED TO PARTIAL SUMMARY JUDGMENT.................................... 8

      A. CBP HAS IMPROPERLY WITHHELD INFORMATION UNDER EXEMPTION 7(E) ........................................................................................................................... 9

        1. CBP HAS NOT SHOWN THAT AFI IS USED FOR INVESTIGATIONS OR PROSECUTIONS................................................................................................ 10

        2. CBP HAS NOT ESTABLISHED THAT DISCLOSURE WOULD RISK CIRCUMVENTION OF THE LAW ....................................................................... 12

      B. CBP HAS FAILED TO DESCRIBE AND JUSTIFY ALL WITHHOLDINGS OF RESPONSIVE RECORDS ......................................................................................... 13

      C. CBP HAS FAILED TO RELEASE REASONABLY SEGREGABLE PORTIONS OF RESPONSIVE RECORDS ......................................................................................... 15

   III.   THE GOVERNMENT'S MOTION SHOULD BE DENIED IN PART ....................... 17

CONCLUSION...................................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Am. Immigration Council v. U.S. Dep't of Homeland Sec.*, 950 F. Supp. 2d 221 (D.D.C. 2013)10, 14, 15, 17
*Blackwell v. FBI*, 646 F.3d 37 (D.C. Cir. 2011) ................................................ 12, 18
*Brown v. FBI*, 873 F. Supp. 2d 388 (D.D.C. 2012) ........................................... 9
*Campbell v. DOJ*, 164 F.3d 20 (D.C. Cir. 1998) ............................................... 15
*Charles v. Office of the Armed Forces Med. Exam'r*, 979 F. Supp. 2d 35 (D.D.C. 2013)..... 15, 16
*Church of Scientology of Cal., Inc. v. Turner*, 662 F.2d 784 (D.C. Cir. 1980) .............. 9
*Citizens for Responsibility and Ethics in Washington v. DOJ*, 746 F.3d 1082 (D.C. Cir. 2014)7, 8
*Clemente v. FBI*, 741 F. Supp. 2d 64 (D.D.C. 2010)......................................... 13
*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854 (D.C. Cir. 1980)............... 7
*Ctr. for Auto Safety v. EPA*, 731 F.2d 16 (D.C. Cir. 1984)................................. 16
*Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83 (D.D.C. 2009)............ 8
*DOJ v. Tax Analysts*, 492 U.S. 136 (1989)................................................... 7
*EPA v. Mink*, 410 U.S. 73 (1973) .......................................................... 11
*EPIC v. DHS*, 384 F. Supp. 2d 100 (D.D.C. 2005)........................................... 7
*EPIC v. DHS*, 999 F. Supp. 2d 24 (D.D.C. 2013)......................................... 7, 8, 11
*EPIC v. DOJ*, 511 F. Supp. 2d 56 (D.D.C. 2007)............................................ 7
*Harrison v. Fed. Bureau of Prisons*, 681 F. Supp. 2d 76 (D.D.C. 2010) ................... 17
*John Doe Agency v. John Doe Corp.*, 493 U.S. 146 (1989) ................................. 9
*Johnson v. EOUSA*, 310 F.3d 771 (D.C. Cir. 2002)....................................... 16, 17
*Judicial Watch, Inc. v. DHS*, 841 F. Supp. 2d 142 (D.D.C. 2012) ......................... 17
*King v. DOJ*, 830 F.2d 210 (D.C. Cir. 1987)............................................... 9
*Mayer Brown LLP v. IRS*, 562 F.3d 1190 (D.C. Cir. 2009) ............................... 13
*Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242 (D.C. Cir. 1977).............. 16
*Milner v. Dep't of the Navy*, 131 S. Ct. 1259 (2011)........................................ 7
*Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157 (2004) ......................... 9
*Nat'l Ass'n of Home Builders v. Norton,* 309 F.3d 26 (D.C. Cir. 2002)..................... 7
*Neuman v. United States*, ___ F. Supp. 3d ___, 2014 WL 4922584 (D.D.C. Sept. 30, 2014) ... 8, 9
*Oglesby v. United States Dep't of the Army*, 79 F.3d 1172 (D.C. Cir. 1996)............... 16
*People for the Ethical Treatment of Animals v. NIH*, 745 F.3d 535 (D.C. Cir. 2014) ...... 9
*Pratt v. Webster*, 673 F.2d 408 (D.C. Cir. 1982)............................................ 10
*Pub. Citizen, Inc. v. Rubber Mfrs. Ass'n*, 533 F.3d 810 (D.C. Cir. 2008) .................. 7
*Pub. Empls. for Envtl. Responsibility v. U.S. Section, Int'l Boundary and Water Comm'n*, 740 F.3d 195 (D.C. Cir. 2014) .............................................. 10, 11, 12
*Sciacca v. FBI*, 23 F. Supp. 3d 17 (D.D.C. 2014)........................................... 15
*Stolt-Nielsen Transp. Group Ltd v. United States*, 534 F.3d 728 (D.C. Cir. 2008)......... 16
*Strunk v. U.S. Dep't of State*, 845 F. Supp. 2d 38 (D.D.C. 2012)........................ 10, 18
*Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022 (D.C. Cir. 1999)..... 16
*Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973)........................................... 17

**Statutes**

5 U.S.C. § 552(a)(3)(A) ..................................................................... 9, 17
5 U.S.C. § 552(a)(4)(B) ...................................................................... 7
5 U.S.C. § 552(b) ......................................................................... 15, 17

5 U.S.C. § 552(b)(7) .................................................................................................. 9
5 U.S.C. § 552(b)(7)(E) ................................................................................ 10, 11, 12
5 U.S.C. § 552a(e)(7) .................................................................................................. 4

**Other Authorities**
*EPIC v. Department of Homeland Security: Media Monitoring* (2015) ........................................ 4
*EPIC—FOIA Documents Reveal Homeland Security is Monitoring Political Dissent* (Jan. 23, 2012) .......................................................................................................................... 4
Privacy Office, U.S. Dep't of Homeland Security, *2013 Data Mining Report to Congress* .......... 2
*U.S. Dep't of Homeland Security, Privacy Impact Assessment for the Analytical Framework for Intelligence (AFI) (2012)* .............................................................................. 2, 4, 13
U.S. Dep't of Homeland Security, *Privacy Impact Assessment for the Automated Targeting System*, DHS/CBP/PIA-006 (b) ............................................................................... 3

**Rules**
Fed. R. Civ. P. 56(a) .................................................................................................. 8

**Regulations**
AFI Notice of Privacy Act System of Records, 77 Fed. Reg. 33,753 ................................. 2, 3, 12
Automated Targeting System Notice of Privacy Act System of Records, 77 Fed. Reg. 30 .......... 3

## PRELIMINARY STATEMENT

This case arises out of a Freedom of Information Act ("FOIA") request for records relating to the U.S. Customs and Border Protection's ("CBP") Analytical Framework for Intelligence ("AFI"). CBP uses AFI to analyze personally identifiable information from a variety of sources, including government databases, commercial data brokers, and other Internet sources. These databases contain detailed personal information, subject to the Privacy Act, that are combined with secret, analytic tools to assign "risk assessments" to travelers, including U.S. citizens traveling solely within the United States.

Plaintiff Electronic Privacy Information Center ("EPIC') now challenges CBP's withholding of certain portions of records under Exemption 7(E), CBP's failure to describe and justify all withholdings of responsive records, as well as CBP's failure to release reasonably segregable portions of records. EPIC pursued this FOIA request to make public the agency's use of personal information for automated profiling as well as the chilling effect of First Amendment protected activities. Both activities may violate the Federal Privacy Act; the disclosure of the documents sought by EPIC is of utmost importance to the public and Congressional oversight committees.

CBP has not satisfied its statutory obligation to disclose records responsive to EPIC's request or established that they are exempt from disclosure. CPB has also failed to establish that certain documents and portions of documents are properly withheld pursuant to Exemption 7(E). Because the Government has improperly withheld non-exempt records, the Court should grant EPIC's Motion for Summary Judgment.

## BACKGROUND

I.     **CBP Analyzes Secret Risk-Based Profiles Assigned to US Citizens in the Analytical Framework for Intelligence**

According to AFI Privacy Impact Assessment, the Agency maintains six categories of data, each of which contains personally identifiable information: DHS-owned data, other government agency data, information from commercial data aggregators, analyst-created data, analyst-provided data, and index information. *U.S. Dep't of Homeland Security, Privacy Impact Assessment for the Analytical Framework for Intelligence (AFI) (2012).*[1] AFI further "collects identity and imagery data from several commercial data aggregators. . . [to] cross-reference that information with the information contained in DHS-owned systems." *Id.* at 10. AFI contains personally identifiable information including full name, address, age, gender, race, physical characteristics, marital status, residency status, country of citizenship, city and country of birth, date of birth, Social Security number, vehicle information, travel information, document information, passport information, law enforcement records, and familial and other contact information. *Id.* at 9, 27–28. AFI became operational in August 2012. Privacy Office, U.S. Dep't of Homeland Security, *2013 Data Mining Report to Congress* 30 (2014).[2]

Some of the "DHS-owned" data within AFI comes from the Automated Targeting System ("ATS"). *Privacy Impact Assessment for the Analytical Framework for Intelligence* at 3. Specifically, AFI "ingest[s]" data "through and from [ATS] and other source systems." AFI Notice of Privacy Act System of Records, 77 Fed. Reg. 33,753 (June 7, 2012). In addition to the data amassed from ATS, CBP uses AFI to "provide AFI analysts with different tools that assist in detecting trends, patterns, and emerging threats, and in identifying non-obvious relationships."

---

[1] http://www.dhs.gov/xlibrary/assets/privacy/privacy_pia_cbp_afi_june_2012.pdf.
[2] http://www.dhs.gov/sites/default/files/publications/dhs-privacy-2013-dhs-data-mining-report.pdf.

*Id*. According to the agencies, DHS and CBP use individual information within ATS to make "risk assessments" on individuals that travel to, through, and from the United States or "other locations where CBP maintains an enforcement or operational presence by land, air, or sea." Automated Targeting System Notice of Privacy Act System of Records, 77 Fed. Reg. 30, 297–99 (May 22, 2012). These risk assessments are assigned to U.S. citizens. *Id*. at 30,299. CBP uses "Automated Targeting System" risk assessments to "signal to CBP officers that further inspection of a person, shipment, or conveyance may be warranted, even though an individual may not have been previously associated with a law enforcement action or otherwise be noted as a person of concern to law enforcement." U.S. Dep't of Homeland Security, *Privacy Impact Assessment for the Automated Targeting System*, DHS/CBP/PIA-006 (b) at 19 (2012).[3] CBP uses initial "risk-based" assessment matches and subsequent matches "to confirm continued official interest in the identified person." *Id.*

CBP uses a variety of personally identifiable information within ATS to perform risk assessments, including name, address, Social Security number, gender, nationality, race, and biometric information. Notice of Privacy Act System of Records at 30,299. ATS also contains information generated by CBP, including "law enforcement or intelligence information regarding an individual" and "risk-based rules developed by analysts to assess and identify high-risk cargo, conveyances, or travelers that should be subject to further scrutiny or examination." *Id*. at 30,300.

Individuals having information within ATS are not notified of their risk assessment because DHS has exempted ATS from the "notification, access, amendment, and certain accounting procedures of the Privacy Act[.]" *Id*. at 30303.

---

[3] http://www.dhs.gov/xlibrary/assets/privacy/privacy_pia_cbp_ats006b.pdf.

EPIC pursued this FOIA request in part to make public the basis of the Automated Targeting System "risk assessments" within the Analytical Framework for Intelligence.

## II. CBP's Analytical Framework for Intelligence Could Chill Expressive Activity Protected by the First Amendment

Among other capabilities, AFI "permits DHS AFI analysts to upload and store information that may be relevant from other sources, such as the Internet or traditional news media, into projects, responses to RFIs, or final intelligence products." *Privacy Impact Assessment for the Analytical Framework for Intelligence (AFI)* at 3. The public has strong expressive interests in their online activity. The Privacy Act prohibits agencies from maintaining records "describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained or unless pertinent to and within the scope of an authorized law enforcement activity." 5 U.S.C. § 552a(e)(7).  AFI's collection of information posted online implicates the public's First Amendment interests.

DHS has previously monitored the Internet to capture protected speech. In a prior case against DHS in 2012, EPIC uncovered that DHS had contracted with General Dynamics for ongoing media and social media monitoring and periodic reports. *EPIC—FOIA Documents Reveal Homeland Security is Monitoring Political Dissent* (Jan. 23, 2012).[4] The documents reveal that DHS paid General Dynamics to "[i]dentify[] media reports that reflect adversely on the U.S. government, DHS or prevent, protect, respond or recover activities[.]" *EPIC v. Department of Homeland Security: Media Monitoring* (2015), https://epic.org/foia/epic-v-dhs-media-monitoring/.

---

[4] https://epic.org/2012/01/epic---foia-documents-reveal-h.html.

4

As with DHS's social media monitoring for political dissent, here the public should be informed about whether and how CBP uses AFI to scrutinize First Amendment protected activities. The public should also be informed about what types of information are being uploaded, from what sources, and how CBP uses the information.

## III.   Factual Background

On April 8, 2014, EPIC submitted, via certified mail, a FOIA request to the CBP's FOIA Office. *See* Def.'s Mot. for Summ. J., Ex. A (ECF No. 18-2) ("EPIC FOIA Request"). EPIC's FOIA Request sought:

> (1) All AFI training modules, request forms, and similar final guidance documents that are used in, or will be used in, the operation of the program;
> (2) Any records, memos, opinions, communications, or other documents that discuss potential or actual sources of information not currently held in DHS databases, or potential or actual uses of information not currently held in DHS databases;
> (3) Any records, contracts, or other communications with commercial data aggregators regarding the AFI program; and
> (4) The Privacy Compliance Report initiated in August 2013 by the DHS Privacy Office.

*See* EPIC FOIA Request; Compl. ¶¶ 30–31; Answer ¶¶ 30–31. EPIC also sought "News Media" fee status as a "representative of the news media" under 5 U.S.C. § 552(a)(4)(A)(ii). *See* EPIC FOIA Request; Compl. ¶¶ 32–33; Answer ¶¶ 32–33.

EPIC filed suit after CBP failed to make a determination within the statutory deadline. Pursuant to the Court's General Order and Guidelines for Civil Cases, the parties submitted a Joint Status Report, in which CBP agreed to disclose non-exempt records responsive to EPIC's FOIA Request and complete document production by February 5, 2015. *See* Joint Status Report (ECF No. 12); November 18, 2014 Minute Order. On February 5, 2015, EPIC received from CBP 358 pages of records. After EPIC reviewed the documents, EPIC and CBP filed another Joint Status Report in which the parties agreed that EPIC would not challenge CBP's

withholdings claimed under FOIA Exemptions (b)(6) and (b)(7)(C). *See* Joint Status Report (ECF No. 13). The Joint Status Report stated that, at that time, EPIC intended to challenge CBP's withholdings claimed under FOIA Exemptions (b)(3), (b)(4), (b)(5), and (b)(7)(E). *Id.* at 2.

CBP filed its Motion for Summary Judgment and Declaration of Sabrina Burroughs on May 28, 2015. (ECF Nos. 18 and 18-1). Per the February 27, 2015 Joint Status Report, EPIC has agreed not to challenge CBP's withholdings claimed under FOIA Exemptions (b)(6) and (b)(7)(C). *See* Joint Status Report 2 (ECF No. 13). After having reviewed the declaration of Sabrina Burroughs, EPIC concedes that CBP has met its statutory obligations to justify CBP's withholdings claimed under FOIA Exemptions (b)(3), (b)(4), and (b)(5). As explained in the Burroughs Declaration, the CBP initially withheld the Privacy Compliance Report in full pursuant to FOIA Exemption (b)(5), but following EPIC's lawsuit, the DHS has since published the Report in full on the DHS website. Burroughs Decl. ¶ 14.

Accordingly, EPIC challenges CBP's remaining withholdings claimed under FOIA Exemptions (b)(7)(E) for 314 pages of documents. Specifically, CBP has applied FOIA exemption (b)(7)(E) to "screen shots of the AFI system and specific information regarding how to navigate and use AFI as well as to descriptions of law enforcement techniques and procedures regarding the use of the AFI system, AFI's capabilities, and CBP's processing of international travelers." Burroughs Decl. ¶ 32.

As described below, CBP has improperly withheld information under Exemption 7(E). CBP has also failed to adequately describe and justify all withheld materials. Finally, CBP has failed to release reasonably segregable portions of responsive records.

## ARGUMENT

The FOIA was enacted "to facilitate public access to Government documents" and "was

designed to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Citizens for Responsibility and Ethics in Washington v. DOJ*, 746 F.3d 1082, 1088 (D.C. Cir. 2014) [hereinafter *CREW*] (quoting *Dep't of State v. Ray*, 502 U.S. 164, 173 (1991)). The underlying purpose of the FOIA is "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *EPIC v. DHS*, 999 F. Supp. 2d 24, 29 (D.D.C. 2013) (quoting *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989)). "In enacting FOIA, Congress struck the balance it thought right—generally favoring disclosure, subject only to a handful of specified exemptions—and did so across the length and breadth of the Federal Government." *Milner v. Dep't of the Navy*, 562 U.S. 562, 572 (2011). As a result, the FOIA "mandates a strong presumption in favor of disclosure." *EPIC v. DOJ*, 511 F. Supp. 2d 56, 64 (D.D.C. 2007) (internal citations omitted).

The FOIA specifies that certain categories of information may be exempt from disclosure, "[b]ut these limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Pub. Citizen, Inc. v. Rubber Mfrs. Ass'n*, 533 F.3d 810, 813 (D.C. Cir. 2008) (quoting *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002)). Therefore FOIA exemptions "must be narrowly construed." *Id.* "The statute's goal is broad disclosure, and the exemptions must be given a narrow compass." *Milner*, 562 U.S. at 571 (internal citations omitted). Furthermore, "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B); *see also EPIC v. DHS*, 384 F. Supp. 2d 100, 106 (D.D.C. 2005). Where the government has not carried this burden, summary judgment in favor of the Plaintiff is appropriate. *See, e.g.*, *DOJ v. Tax Analysts*, 492 U.S. 136, 142 (1989); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 861 (D.C. Cir. 1980).

## I.     STANDARD OF REVIEW

Summary judgment should be granted if "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). "A genuine issue of material fact is one that would change the outcome of the

litigation." *EPIC v. DHS*, 999 F. Supp. 2d 24, 28 (D.D.C. 2013) (citing *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986)). FOIA cases are typically decided on motions for

summary judgment. *Id.  See Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87

(D.D.C. 2009). A district court reviewing a motion for summary judgment in a FOIA case

"conducts a de novo review of the record, and the responding federal agency bears the burden of

proving that it has complied with its obligations under the FOIA." *Neuman v. United States*, ___

F. Supp. 3d ___, 2014 WL 4922584, at *3 (D.D.C. Sept. 30, 2014). *See also* 5 U.S.C. §

552(a)(4)(B); *CREW*, 746 F.3d at 1088 (citing *DOJ v. Reporters Comm. for Freedom of the*

*Press*, 489 U.S. 749, 755 (1989)).

The court must "analyze all underlying facts and inferences in the light most favorable to

the FOIA requester," and therefore "summary judgment for an agency is only appropriate after

the agency proves that it has 'fully discharged its [FOIA] obligations.'" *Neuman*, 2014 WL

4922584, at *4 (citing *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996)). In some cases, the

agency may carry its burden by submitting affidavits that "describe the justifications for

nondisclosure with reasonably specific detail, demonstrate that the information withheld

logically falls within the claimed exemption, and are not controverted by either contrary

evidence in the record nor evidence of agency bad faith." *Id*. (*citing Larson v. Dep't of State*, 565

F.3d 857, 862 (D.C. Cir. 2009)).

## II.    EPIC IS ENTITLED TO PARTIAL SUMMARY JUDGMENT

The FOIA provides that every government agency shall "upon any request which (i)

reasonably describes such records and (ii) is made in accordance with published rules . . . make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). Despite the general "prodisclosure purpose" of the statute, *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004), the FOIA provides for nine exemptions. These exemptions outline "specified circumstances under which disclosure is not required." *Neuman,* 2014 WL 4922584, at *3. *See* 5 U.S.C. § 552(b).

In a FOIA case, the "agency bears the burden of establishing that an exemption applies." *People for the Ethical Treatment of Animals v. NIH*, 745 F.3d 535, 540 (D.C. Cir. 2014). The agency may "meet this burden by filing affidavits describing the material withheld and the manner in which it falls within the exemption claimed." *King v. DOJ*, 830 F.2d 210, 217 (D.C. Cir. 1987). However, it is not sufficient for the agency to provide "vague, conclusory affidavits, or those that merely paraphrase the words of a statute." *Church of Scientology of Cal., Inc. v. Turner*, 662 F.2d 784, 787 (D.C. Cir. 1980) (per curiam). When an agency invokes an exemption, "it must submit affidavits that provide 'the kind of detailed, scrupulous description [of the withheld documents] that enables a District Court judge to perform a de novo review.'" *Brown v. FBI*, 873 F. Supp. 2d 388, 401 (D.D.C. 2012) (citing *Church of Scientology*, 662 F.2d at 786) (discussing an agency invocation of Exemption 3).

**A. CBP Has Improperly Withheld Information Under Exemption 7(E)**

To withhold records under Exemption 7(E) an agency must satisfy two statutory requirements. First, the agency must satisfy the threshold Exemption 7 requirement that the record was "compiled for law enforcement purposes." § 552(b)(7). *See John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 153 (1989) ("Before it may invoke [Exemption 7], the Government has the burden of proving the existence of such a compilation for such a purpose."); *Pub. Empls. for Envtl. Responsibility v. U.S. Section, Int'l Boundary and Water Comm'n*, 740 F.3d 195, 202–

9

03 (D.C. Cir. 2014) [hereinafter *PEER*]. Second, the agency must show that production would either "disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." § 552(b)(7)(E); *see PEER*, 740 F.3d at 204. To satisfy the second prong, the agency must provide a "relatively detailed justification" for each record that permits the reviewing court to make a meaningful assessment of the redactions. *Strunk v. U.S. Dep't of State*, 845 F. Supp. 2d 38, 47 (D.D.C. 2012). This detailed justification includes

> 1) a description of the technique or procedure at issue in each document, 2) a reasonably detailed explanation of the context in which the technique is used, 3) an exploration of why the technique or procedure is not generally known to the public, and 4) an assessment of the way(s) in which individuals could possibly circumvent the law if the information were disclosed.

*Am. Immigration Council v. U.S. Dep't of Homeland Sec.*, 950 F. Supp. 2d 221, 247 (D.D.C. 2013). The records at issue in this case likely satisfy Exemption 7's "law enforcement purpose" requirement, but do not satisfy the harm requirement of 7(E). The Exemption 7 threshold requirement is broader than 7(E)'s requirement that disclosure "would reveal techniques and procedures for law enforcement investigations or prosecutions." *See Pratt v. Webster*, 673 F.2d 408, 420 (D.C. Cir. 1982) (finding that "Congress intended that 'law enforcement purpose' be broadly construed"); *Tax Analysts*, 294 F.3d at 79 (noting that in 1986, Congress broadened Exemption 7's threshold requirement by "deleting any requirement that the information be 'investigatory'"). However, because CBP fails to satisfy 7(E)'s requirements, the agency's withholdings under 7(E) are unlawful.

### 1. CBP Has Not Shown That AFI is Used for Investigations or Prosecutions

To meet the standard of Exemption 7(E), a record must refer to a technique, procedure, or guideline used for "investigations or prosecutions." § 552(b)(7)(E). Investigations or

prosecutions under 7(E) include only to "acts by law enforcement *after* or *during* the commission of a crime, not crime-prevention techniques." *EPIC v. DHS*, 999 F. Supp. 2d at 31 (emphasis added), *rev'd on other grounds*, 777 F.3d 518 (D.C. Cir. 2015). In contrast, the term "law enforcement purposes" in Exemption 7 includes protective measures. *See PEER*, 740 F.3d at 203.

Here, AFI is plainly not used for law enforcement investigations taking place before or after the commission of a crime, but rather for security screening activities. The system purports to aid in the "processing of international travelers" by identifying individuals "who pose a potential law enforcement or security risk." Burroughs Decl. ¶¶ 34–35. These activities fall squarely under the category of proactive security screening and administration of border checkpoints, and therefore the records withheld are beyond the scope of 7(E).

Further, it is not enough for CBP to state that AFI "enhances DHS's ability to . . . prosecute individuals . . . ." *See* Burroughs Decl. ¶ 35. Information withheld under 7(E) must itself be "*for* . . . investigations or prosecutions." § 552(b)(7)(E) (emphasis added). Put differently, 7(E) does not cover information about a government program simply because it aids a prosecution to any degree. Indeed, all law enforcement agency activities might be described as contributing to speculative future prosecutions. But CBP's expansive reading of the term "investigations or prosecutions" would render the narrower Exemption 7(E) superfluous to the broader Exemption 7 threshold requirement, and transform FOIA from a "disclosure statute" into a "withholding statute." *EPA v. Mink*, 410 U.S. 73, 79 (1973). *See EPIC v. DHS*, 999 F. Supp. 2d at 30 ("The Court must begin by 'presum[ing] that a legislature says in a statute what it means and means in a statute what it says there.'") (quoting *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992)).

## 2. CBP Has Not Established That Disclosure Would Risk Circumvention of the Law

Exemption 7(E) permits an agency to withhold documents only if "disclosure could *reasonably be expected to risk circumvention of the law*." § 552(b)(7)(E) (emphasis added). To satisfy this requirement, an agency must "demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (citing *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009)).[5] To do this, an agency must "demonstrate only that release of a document might increase the risk 'that a law will be violated or that past violators will escape legal consequences.'" *PEER,* 740 F.3d at 205 (quoting *Mayer Brown LLP,* 562 F.3d at 1193)).

In this case, CBP has failed to demonstrate logically how disclosure of the redacted information would risk of circumvention of the law. In attempting to explain the risks of disclosure, the agency makes numerous dubious claims. First, the agency states that information regarding AFI use, capabilities, and CBP's processing of international travelers "would enable potential violators to design strategies to circumvent law enforcement procedures developed by CBP." *See* Burroughs Decl. ¶ 34. But this is a conclusion, not an explanation. The agency fails to logically connect the disclosure of information about AFI's capabilities and the risk of bad actors circumventing the law. For example, the "AFI: Analytical Framework for Intelligence" and the "OIIL Analytical Framework for Intelligence" handouts which CBP has withheld in part, appear to provide general overviews of AFI capabilities, similar to the overviews in the AFI SORN and Privacy Impact Assessment. *See* Ex. 2, at  000001–8. *See* AFI Notice of Privacy Act System of Records, 77 Fed. Reg. 33,753; *Privacy Impact Assessment for the Analytical Framework for*

---

[5] Although some circuits have disagreed, the D.C. Circuit has applied the "risk circumvention of the law" requirement to both "guidelines" and "techniques and procedures." *PEER*, 740 F.3d at 205 n. 4.

*Intelligence (AFI)* (2012). The agency has failed to explain how release of these documents or any other documents allegedly describing AFI use and capabilities and CBP's processing of international travelers would risk circumvention of the law.

Second, the agency withheld screenshots and information regarding how to navigate the AFI system because the information "may enable an individual knowledgeable in computer systems to improperly access the system, facilitate navigation or movement through the system, allow manipulation or deletion of data and interfere with enforcement proceedings." Burroughs Decl. at ¶ 33. *See* Ex. 1. But the agency fails to support the incredible claim that, by simply viewing the graphical interface of AFI and navigation instructions, a bad actor could gain access to the system and cause "alteration, loss, damage or destruction of data contained [in AFI]." Burroughs Decl. ¶ 33. To satisfy its evidentiary burden CBP cannot, as it has here, "rely upon the vaguely worded categorical description it has provided. It must provide evidence from which the Court can deduce something of the nature of the techniques in question." *Clemente v. FBI*, 741 F. Supp. 2d 64, 88 (D.D.C. 2010). CBP has simply not met its burden to describe how AFI screenshots and information regarding how to navigate AFI will increase the risk "that a law will be violated or that past violators will escape legal consequences." *Mayer Brown LLP v. IRS,* 562 F.3d 1190, 1193 (D.C. Cir. 2009). Accordingly, this Court should grant EPIC's summary judgment motion.

**B. CBP Has Failed to Describe and Justify All Withholdings of Responsive Records**

The Burroughs Declaration fails to provide the requisite level of detail to justify the withholding of certain information from responsive documents.  "[T]o assist a court in its de novo review of the withholdings and to allow the party seeking access to documents to engage in effective advocacy, the government must furnish 'detailing and specific information demonstrating 'that material withheld is logically within the domain of the exemption claimed.'"

13

*Am. Immigration Council*, 950 F. Supp. 2d at 235 (quoting *Campbell v. DOJ*, 164 F.3d 20, 30

(D.C. Cir. 1998)).

> Specifically, the government must:
>
> (1) [I]dentify the document, by type and location in the body of documents requested; (2) note that [a particular exemption] is claimed; (3) describe the document withheld or any redacted portion thereof, disclosing as much information as possible without thwarting the exemption's purpose; (4) explain how this material falls within one or more of the categories ...; and [if the exemption requires a showing of harm] (5) explain how disclosure of the material in question would cause the requisite degree of harm.

*Id.* (quoting *King*, 830 F.2d at 224).

Here, the Burroughs Declaration merely states, "In this case, exemption (b)(7)(E) has

been applied to screen shots of the AFI system and specific information regarding how to

navigate and use AFI as well as to descriptions of law enforcement techniques and procedures

regarding the use of the AFI system, AFI's capabilities, and CBP's processing of international

travelers." Burroughs Decl. ¶ 32. Although this general description describes many of the pages

of documents the agency has produced, it fails to identify, describe, and justify 60 pages of

(7)(E) withholdings. Specifically, the CBP's document production included documents entitled

"AFI Data Source Ranking Results," two separate documents entitled "AFI Data Sources,"

"Prior to Training,"  "AFI Access Pre-Training Check List," "Training Day— Before

Participants Arrive," "Training Day—During Training," "AFI Weekly

Requirement/Development Meeting Minutes," "Order for Supplies or Services," and "Items and

Prices, Delivery Schedule and Accounting Data" for delivery orders HSBP1010J00572,

HSBP1012J00087, HSBP1013J00065, HSBP1014J00039, HSBP1015F00023, and

HSBP1109J28871. *See* Ex.3.

The Burroughs Declaration fails to: (1) identify these documents by type and location; (2)

describe the documents and their redactions; (3) explain how this information is exempted

pursuant to (b)(7)(E); and (4) explain how disclosing the redacted information "would cause the requisite degree of harm." *Am. Immigration Council.,* 950 F. Supp. 2d at 235. These documents, produced without a description, exemption justification, or even a mention in the Burroughs Declaration, do not "suffice to allow [EPIC] to glean adequate context or engage in the type of advocacy that FOIA seeks to encourage." *Id.* at 237.

Thus, by failing to describe, for example, "what types of documents these pages belong to, who created the documents and for what purpose, and how the exemptions relate to the nature of the documents themselves," CBP concedes that these documents have not been properly withheld under the FOIA. *Sciacca v. FBI*, 23 F. Supp. 3d 17, 30 (D.D.C. 2014). CBP has failed to satisfy its evidentiary burden concerning Exhibit 3 by failing to provide "detailed and specific information demonstrating 'that material withheld is logically within the domain of the exemption claimed.'" *Campbell v. DOJ*, 164 F.3d 20, 30 (D.C. Cir. 1998) (quoting *King,* 830 F.2d at 217). *See also Elkins v. FAA*, 65 F. Supp. 3d 194 (D.D.C. 2014).

Accordingly, summary judgment should be granted in EPIC's favor, and CBP should either be ordered to produce unredacted versions of Exhibit 3 or "must submit revised documentation that is sufficiently detailed and comprehensive to meet the evidentiary standards" of FOIA. *Am. Immigration Council*, 950 F. Supp. 2d at 237.

### C. CBP Has Failed to Release Reasonably Segregable Portions of Responsive Records

The FOIA "makes clear that the fact that a responsive document fits within an applicable exemption does not automatically entitle the keeper of such material to withhold the *entire* record." *Charles v. Office of the Armed Forces Med. Exam'r*, 979 F. Supp. 2d 35, 42 (D.D.C. 2013). Thus even when an agency has properly invoked a FOIA exemption, it must disclose any "reasonably segregable portion" of the record requested. § 552(b); *see Stolt-Nielsen Transp.*

*Group Ltd v. United States*, 534 F.3d 728, 734 (D.C. Cir. 2008) (quoting *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007)); *Oglesby v. United States Dep't of the Army*, 79 F.3d 1172, 1176 (D.C. Cir. 1996) ("If a document contains exempt information, the agency must still release 'any reasonably segregable portion' after deletion of the nondisclosable portions."). "The 'segregability' requirement applies to all documents and all exemptions in the FOIA." *Ctr. for Auto Safety v. EPA*, 731 F.2d 16, 21 (D.C. Cir. 1984).

The burden is on the agency to "provide a detailed justification for its non-segregability." *Johnson v. EOUSA*, 310 F.3d 771, 776 (D.C. Cir. 2002) (internal quotation marks omitted). This includes "a statement of [the government's] reasons," and a "descri[ption of] what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document." *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977). Simply claiming that a segregability review has been conducted is insufficient. *Oglesby*, 79 F.3d at 1180. In addition, if an agency seeks to "withhold a responsive document in its entirety on the basis of a FOIA exemption, the agency bears the burden of demonstrating that the nonexempt portions of the document are so inextricable from the exempt portions that document is not reasonable segregable." *Charles*, 979 F. Supp. 2d at 42. Courts have an "affirmative duty to consider the segregability issue *sua sponte*." *Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999).

In this case, CBP has failed to meet its burden to "provide a detailed justification for its non-segregability." *Johnson*, 310 F.3d at 776. The Burroughs Declaration does not provide a description of the proportions of non-exempt information, nor does the declaration explain how the material is dispersed throughout the withheld documents. *See* Burroughs  Decl. ¶ 36. Courts in this Circuit have previously rejected unsubstantiated claims of segregability and should do so

in this case. *See Judicial Watch, Inc. v. DHS*, 841 F. Supp. 2d 142, 161 (D.D.C. 2012) (finding

"empty invocation of the segregability standard" is not permitted under the FOIA). The CBP

declaration is simply insufficient to justify the (b)(7)(E) redactions.

## III.   THE GOVERNMENT'S MOTION SHOULD BE DENIED IN PART

The FOIA requires that "each agency, upon any request for records which (i) reasonably

describes such records and (ii) is made in accordance with published rules . . . shall make the

records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). However, an agency may

withhold information if it fits within nine narrowly construed exemptions. *See* § 552(b). But the

FOIA also requires that the agency release any "reasonably segregable portion" of the records

requested. 5 U.S.C. § 552(b). The agency in a FOIA case bears the burden of establishing that at

least one exemption applies for each record withheld. *See Vaughn v. Rosen*, 484 F.2d 820, 823

(D.C. Cir. 1973). The agency also bears the burden of proving that it has complied with the

segregability requirement. *Johnson*, 310 F.3d at 776.

As described above, an agency seeking to justify its withholding of responsive records

under the FOIA must satisfy five overarching requirements in addition to the particular standards

of each FOIA exemption claimed.

> The government must "(1) [I]dentify the document, by type and location in the
> body of documents requested; (2) note that [a particular exemption] is claimed;
> (3) describe the document withheld or any redacted portion thereof, disclosing as
> much information as possible without thwarting the exemption's purpose; (4)
> explain how this material falls within one or more of the categories . . .; and [if the
> exemption requires a showing of harm] (5) explain how disclosure of the material
> in question would cause the requisite degree of harm."

*Am. Immigration Council*, 950 F. Supp. 2d at 235 (quoting *King*, 830 F.2d at 224). In order to be

granted summary judgment, the agency must establish that it has satisfied all of the statutory

requirements of the FOIA. *Harrison v. Fed. Bureau of Prisons*, 681 F. Supp. 2d 76, 85 (D.D.C.

2010).

EPIC has previously agreed not to challenge CBP's withholdings claimed under FOIA Exemptions (b)(6) and (b)(7)(C). *See* Joint Status Report at 2 (ECF No. 13). After having reviewed Sabrina Burroughs's declaration, EPIC concedes that CBP has met its statutory obligations to justify CBP's withholdings claimed under FOIA Exemptions (b)(3), (b)(4), and (b)(5). Accordingly, EPIC only challenges CBP's withholdings claimed under Exemption 7(E).

In this case, CBP has withheld 269 pages of responsive records in whole or in part. *See* Burroughs Decl. ¶ 8. Of these records, EPIC challenges the agency's withholding of redacted portions of Exhibits 1–3. For the reasons discussed above, CBP has failed to satisfy its burden to establish Exemption 7(E) justifies the withholding of redacted portions of AFI records.

In order to properly invoke Exemption 7(E), an agency must "demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (citing *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009)). An agency must also provide a "relatively detailed justification" for each record that permits the reviewing court to make a meaningful assessment of the redactions and to understand how disclosure would create a reasonably expected risk of circumvention of the law. *Strunk v. U.S. Dep't of State*, 845 F. Supp. 2d 38, 47 (D.D.C. 2012) (citing *Blackwell*, 646 F.3d at 42)). The agency declaration in this case is not sufficient to establish that all responsive, non-exempt records have been disclosed as required under the FOIA.

As discussed above, CBP has failed to release reasonably segregable portions of responsive records.

## CONCLUSION

For the foregoing reasons, the Court should deny the Defendant's Motion for Summary Judgment in part and grant EPIC's Motion for Summary Judgment in part.


Dated: June 29, 2015                                Respectfully submitted,

                                                    MARC ROTENBERG
                                                    EPIC President

                                                    ALAN JAY BUTLER
                                                    Senior Counsel

                                                    /s/ Khaliah N. Barnes
                                                    _____
                                                    KHALIAH N. BARNES
                                                    EPIC Administrative Law Counsel
                                                    Electronic Privacy Information Center
                                                    1718 Connecticut Ave., NW
                                                    Suite 200
                                                    Washington, DC 20009

                                                    *Counsel for Plaintiff*