UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                         )

ELECTRONIC PRIVACY                     )
INFORMATION CENTER                  )
                                                         )
               Plaintiff,                     )
                                                         )
        v.                                  )     Case No. 1:14-cv-01217-RBW
                                                         )
U.S. CUSTOMS AND BORDER PROTECTION  )
                                                         )
                                                         )
              Defendant.                  )
_____ )

**PLAINTIFF'S REPLY IN SUPPORT OF THE CROSS-MOTION FOR SUMMARY JUDGMENT**

Defendant's Reply and Opposition fails to rebut EPIC's argument that the agency wrongfully withheld records sought under the FOIA. CBP's continued reliance on a conclusory declaration and a misinterpretation of Exemption 7(E) does not advance the ball. The Court should grant EPIC's Cross Motion for Summary Judgment.

**I.    CBP has failed to carry its burden of establishing that Exemption 7(E) applies to the responsive records.**

    **A.    CBP's reading of the term "law enforcement investigations" is contrary to the text of the Act and recent decisions in this Circuit.**

CBP's argument that "law enforcement investigations" includes routine and suspicionless screening practices would render the term "investigations" superfluous. Under the agency's interpretation, the 7(E) requirement would be indistinguishable from the broader (b)(7) "law enforcement purposes" threshold determination. Not only would this violate the superfluity canon, it would go against the core interpretive principle of the FOIA: exemptions "must be narrowly construed." *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011); *see, e.g., EPIC v. DHS*,

1

999 F. Supp. 2d 24, 31 (D.D.C. 2013) ("Reading Exemption 7(E) as such, moreover, is in keeping with FOIA's 'basic policy that disclosure, not secrecy, is the dominant objective of the Act,' and the well-settled practice of reading FOIA exemptions narrowly.") (internal citations omitted). As the D.C. Circuit recently stated, "The court must both narrowly construe the FOIA's exemptions and apply the statute's plain text." *EPIC v. DHS*, 777 F.3d 518 (D.C. Cir. 2015) (citing *Milner*, 131 S. Ct. at 1262, 1264, 1267; *see also John Doe Agency*, 493 U.S. at 152-53; *FBI v. Abramson*, 456 U.S. 615, 630–31 (1982)).

To be sure, law enforcement investigations may sometimes require a determination of "whether a violation of law has occurred or is in progress," Def.'s Opp'n 3. But an "investigation" is not equivalent to a routine security screening. Justice Alito addressed this distinction in *Milner*:

> *"Law enforcement purposes."* The ordinary understanding of law enforcement includes not just the investigation and prosecution of offenses that have already been committed, but also proactive steps designed to prevent criminal activity and to maintain security.
> . . .
> Congress' decision to use different language to trigger Exemption 7 confirms that the concept of "law enforcement purposes" sweeps in activities beyond investigation and prosecution. See *Sosa v. Alvarez–Machain,* 542 U.S. 692, 711, n. 9, (2004) (applying the "usual rule" that "when the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended" (internal quotation marks omitted)).

562 U.S. 570, 582–84 (2011) (Alito, J. concurring). While the agency's use of AFI to screen incoming travelers and cargo may meet the "law enforcement purpose" threshold test, CBP provides no evidence that the AFI system is used for "law enforcement investigations." The agency does not identify any violations of law that the AFI system is used to detect, nor does CBP establish that AFI is used to gather criminal evidence. Accordingly, the Court should conclude that "[i]f 'techniques and procedures for law enforcement investigations or

prosecutions' is given its natural meaning, it cannot encompass the protective measures" that are discussed in the AFI training slides. *EPIC v. DHS*, 999 F. Supp. at 31, *vacated on other grounds* 777 F.3d 518 (D.C. Cir. 2015).[1]

CBP also misconstrues the cases cited in support of its 7(E) analysis. Both *Henderson v. Office of the Director of National Intelligence* and *CREW v. DOJ* concerned actual investigations conducted "after or during" the commission of a potential crime. *Henderson* involved documents that described how the government conducts in-depth, individualized "background security *investigations*" of persons applying for government employment. *Id.* at *5 (emphasis added). And *CREW* involved records containing "information specific to the development of [unmanned aerial vehicles] as an effective *investigative* technical tool for national security and criminal *investigations*." No. CV 13-1159 (GK), 2016 WL 541127, at *12 (emphasis added). Both of these examples involve tools used for in-depth investigations related to possible criminal violations. The other cases cited by CBP similarly involved data used in formal investigations. *Strunk v. U.S. Dep't of State*, 905 F. Supp. 2d 142, 146 (D.D.C. 2012) (involving a computer codes for navigating an investigative database of "inspection and intelligence records"); *Blackwell v. FBI*, 680 F. Supp. 2d 79, 92 (D.D.C. 2010) (involving the manner in which data accessed for law enforcement investigations is "searched, organized, and reported to the FBI"); *Showing Animals Respect & Kindness v. Dep't of Interior*, 730 F. Supp. 2d 180, 200 (D.D.C.

---

[1] CBP states incorrectly that Judge Boasberg did not have case support for this interpretation of Exemption 7(E). Def.'s Opp'n 2. In fact, Judge Boasberg relied directly on Justice Alito's concurring opinion in *Milner v. Department of Navy*, 562 U.S 562, 582 (2011), which the D.C. Circuit itself relied upon in *PEER*, to distinguish the broader (b)(7) threshold test from the narrower "law enforcement investigations" standard in 7(E). *Pub. Emps. For Envtl. Resp. v. U.S. Sec., Int'l Boundary and Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 203 (D.C. Cir. 2014). This Court should follow Judge Boasberg's interpretation of Exemption 7(E), which is consistent with the statutory text and Justice Alito's concurrence in *Milner*.

2010) (involving "specific details of surveillance techniques" used by the U.S. Fish and Wildlife Service to investigate violations of wildlife trafficking laws).

The agency also fails to distinguish *Clemente v. FBI* from this case. Def.'s Opp'n 4. In *Clemente*, the court rejected the government's bid to withhold "logistical details of an FBI undercover operation," holding that the FBI's "vaguely worded categorical description" was not evidence sufficient to allow the court to "deduce something of the nature of the techniques in question." 741 F. Supp. 2d 64, 88 (D.D.C. 2010). Just as the FBI could not simply assert that the logistical details pertained to an FBI undercover operation, CBP cannot simply assert that the AFI system is used for law enforcement investigations. Def.'s Opp'n 4.

CBP also relies on cases where, in the agency's view, courts have upheld non-disclosure of "information that on its face seems harmless." Def.'s Opp'n 5. These cases do not support CBP's argument. The critical difference is that the agencies in all of those cases demonstrated how disclosure could reasonably risk of circumvention of the law. *Strunk*, 905 F. Supp. 2d at 148 (finding risk of circumvention where disclosure of "exact keys and keystrokes used for navigating" a law enforcement database would permit criminals to "alter their behavior to mislead law enforcement and avoid detection"); *Ortiz v. DOJ*, 67 F. Supp. 3d 109, 123 (D.D.C. 2014) (finding risk of circumvention where disclosure of "unique and personal" codes would permit criminals to "change their pattern of drug trafficking in an effort to . . . avoid detection and apprehension"); *Miller v. DOJ*, 872 F. Supp. 2d 12, 29 (D.D.C. 2012) (same); *Skinner v. DOJ*, 893 F. Supp. 2d 109, 114 (D.D.C. 2012) (finding risk of circumvention of where disclosure of access codes to a law enforcement database, which are "assigned to an individual user," could allow criminals to "avoid recognition, instant detection and apprehension," acquire "near-unfettered access," and "irreparably corrupt the integrity" of the system); *Long v. Immigrations*

*and Customs Enforcement*, --- F. Supp. 3d ---, 2015 WL 8751005 (D.D.C. Dec. 14, 2015) (finding risk of circumvention based on an affidavit of an information technology specialist explaining how disclosure of database schema, tables, and codes could permit hackers to launch a "Structured Query Language injection attack" and access "restricted parts of the database to view or steal information"). CBP has failed to make a similar showing in this case.

CBP also finds no help in *Blackwell*, 646 F.3d 37, which concerned specific investigative reports prepared for the FBI. Unlike the FBI, the CBP is not primarily an investigative agency. Furthermore, the reports at issue in *Blackwell* were prepared for FBI investigators. *Id.* at 42. In contrast, the "statements of work" and "orders" at issue in this case are routine agency contracting documents, not investigative reports.

Lastly, CBP implies that the court must afford the agency "general deference" because the case involves 7(E). The agency has confused the case law on (b)(7) with the case law on (b)(7)(E). The Exemption 7 deference to which CBP alludes, Def.'s Opp'n 5 (citing *Campbell v. DOJ*, 164 F.3d 20, 42 (D.C. Cir. 1998)), concerns the deference a court gives to a law enforcement agency's claim of Exemption 7's "law enforcement purposes" threshold. Because there is no dispute in this case on whether the law enforcement threshold has been met, *Campbell* and the argument concerning "deference" are irrelevant.

**B.  CBP has failed to establish that disclosure of screenshots, work orders, and publicly available encryption standards would risk circumvention of the law.**

CBP has failed to "demonstrate logically" how disclosure could reasonably risk circumvention of the law. *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Circ. 2011). Regarding AFI screenshots, the agency simply offers the unsupported assertion that "there is enough reason to believe that understanding the organization of the system and of the data stored thereon would risk circumvention of the law." Def.'s Opp'n 7. But whether the agency has provided the court

"enough reason" is precisely the dispute in this case. CBP has offered no evidence, other than conclusory statements in the Burroughs declaration, to support this assertion. It is not necessary for EPIC to hire an "expert in data security," Def.'s Opp'n 8, when it is the Government who bears the burden of proof. 5 U.S.C. § 552(a)(4)(B).

With respect to the LexisNexis work orders, the agency relies solely on conclusory statements from Ms. Burroughs' declaration that the details in these documents "could reasonably allow a person to recognize search terms specifically applied by law enforcement to query LexisNexis databases" Def.'s Opp'n 7 (citing Supp. Burroughs Decl. ¶ 16). CBP has not, in fact, provided "a 'sufficiently specific link' between the materials withheld and the risks of disclosure" because it has not explained how disclosure of work orders could possibly reveal search terms. In *Island Film v. Department of the Treasury*, the court ruled against the Treasury's withholding of screenshots of various databases used in investigations. 869 F. Supp. 2d 123, 138 (D.D.C. 2012). In rejecting the government's application of 7(E), the court concluded "[n]either the *Vaughn* index nor Treasury's affidavit provides a sufficiently specific link between disclosing the particular database printouts that Treasury seeks to withhold and revealing when, how, and to what extent OFAC relies on these databases in its investigations. Rather, they both merely recite the language of the exemption." *Id.* Just like in *Island Film*, neither the Vaughn index nor Ms. Burroughs' declaration provides "a sufficiently specific link" between disclosure of the LexisNexis work orders and revealing "when, how, and to what extent" CBP relies on those databases.

CBP has similarly failed to justify the withholdings of descriptions of the encryption standards used in AFI. The agency makes no affirmative argument in support of its withholding of these descriptions. Instead, the agency merely states "CBP is not required to release the

specific encryption standards it has opted to use." Def.'s Opp'n 7–8. On the contrary, agency records shall be made available to the public unless the controlling agency "reasonably foresees that disclosure would harm an interest protected by" one of the FOIA's enumerated exemptions. FOIA Improvements Act of 2016, sec. 2, Pub. L. No. 114-185 (to be codified at 5 U.S.C. § 552(a)(8)(A)(i)(I)). Moreover, an agency invoking Exemption 7(E) must show that the information withheld "is not generally known to public." *EPIC v. DEA*, --- F. Supp. 3d ---, 2016 WL 3557007, at *32 (D.D.C. June 24, 2016) (rejecting agency's 7(E) claim after finding that "publicly available information about such telecommunication companies' facility locations is as available now as it would be were the DEA to disclose the identities of the companies assisting with" a mass surveillance program). Information about encryption standards, which are public and openly studied, do not reveal any system's vulnerability. In any event, the agency has failed to logically demonstrate that "descriptions" of encryption standards contained in LexisNexis work orders could reasonably risk circumvention of the law. Because CBP does not even attempt to carry its burden of showing that Exemption 7(E) properly applies to these descriptions of encryption standards, the records must be disclosed.

**II.    CBP has failed to release all reasonably segregable, non-exempt portions of the responsive records.**

CBP's sparse declaration and *Vaughn* index are insufficient to meet the agency's burden to "provide a detailed justification for its non-segregability." *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (internal quotation marks omitted). Courts have rejected "blanket declaration[s] that all facts are so intertwined to prevent disclosure under the FOIA does not constitute a sufficient explanation of non-segregability . . . . Rather, for *each* entry the defendant is required to specify in detail which portions of the document are disclosable and which are allegedly exempt." *Wilderness Soc. v. U.S. Dep't of Interior*, 344 F.

7

Supp. 2d 1, 19 (D.D.C. 2004) (internal citations omitted)).

As EPIC has explained in detail, unsubstantiated claims of segregability must be rejected. *Judicial Watch, Inc. v. DHS*, 841 F. Supp. 2d 142, 161 (D.D.C. 2012) (finding "empty invocation of the segregability standard" is not permitted under the FOIA). CBP has failed to establish that it has disclosed all reasonably segregable non-exempt materials.

## CONCLUSION

For the foregoing reasons, the Court should grant EPIC's Cross-Motion for Summary Judgment.

Dated: July 15, 2016

Respectfully submitted,

MARC ROTENBERG
EPIC President

ALAN JAY BUTLER
EPIC Senior Counsel

*/s/ T. John Tran*
T. JOHN TRAN
EPIC FOIA Counsel
Electronic Privacy Information Center
1718 Connecticut Ave., NW
Suite 200
Washington, DC 20009

*Counsels for Plaintiff*